MORRIS, et al, Appellants, v. CRILLY, Respondent

(29 N. W.2d 805.)

(File No. 8909.   Opinion filed December 1, 1947.)

**T. B. Thorson** and **H. R. Hanley,** both of Rapid City, for Plaintiffs and Appellants.

**Whiting & Wilson** and **H. F. Fellows,** all of Rapid City, for Defendant and Respondent.

RUDOLPH, J.   Joanna Held died in May 1941.   Prior to her death she was the owner of a certain residence property in Rapid City and a ranch in Pennington County.   Sub-

sequent to her death the present plaintiffs claimed title to the residence and ranch property under certain deeds from the deceased. The administrator of the Joanna Held estate brought an action to set aside these deeds and demanded in his complaint that "the defendants be ordered and required to render an accounting * * * of all the rentals which have become due to the estate of said Joanna Held by reason of their use and occupancy of property of said estate since her death, and that the defendants be adjudged to pay over to the plaintiff the sums found due to the estate of Joanna Held on such accounting." The Circuit Court of Pennington County entered its judgment declaring the deeds to be void and decreeing title to the property to be in the intervening plaintiff, Clara Held Reid, and one Margaret Reithmann, subject to the administration of the estate of Joanna Held. In its findings of fact the circuit court found that the deeds under which the defendants claimed the property were not delivered during the life of Joanna Held, and that the defendants attempted to support the validity of these deeds by other evidence which was "a forgery and fraud." The court further found that the reasonable rental value of the ranch property "is $3.50 per acre annum for the 314 acres of irrigated land and 15¢ per acre per annum for the 533 acres of dry land or a total sum of $1,178.95 per annum, and the reasonable rental value of the town property is the sum of $45.00 per month." The judgment entered in that action awarded the plaintiff as administrator of the estate of Joanna Held, deceased, "the sum of $3,536.85 for rent due for the ranch property and $1,215.00 for rent due for the house and lots in Rapid City, South Dakota, since the death of Joanna Held" and gave to the said administrator the immediate possession of all of the real property. The judgment of the trial court was affirmed by this court. Crilly et al, v. Morris et al., 70 S. D. 584, 19 N. W.2d 836. Pending the appeal to this court the present plaintiffs, S. Fred Morris and Isaac A. Morris remained in possession of the residence and ranch property. Following the affirmance of the judgment, the plaintiffs paid to the administrator of the Held estate the amount of the judgment and a further

amount for the holding and use of the property during the time consumed by the appeal, which in all, amounted to the sum of $9,579.12. It appears from the record that the parties determined the amount to be paid for the holding and use of the property from the time of the entry of the judgment until the the final disposition of the case on appeal upon the same basis as used by the trial court in entering its judgment, that is, upon the rental value of the property for the period involved.

In this present action the plaintiffs seek to recover from the administrator of the Joanna Held estate certain expenditures made by them while in possession of the property, also an amount which they assert is due them as a result of the final settlement of the prior action, and certain abstract costs.

■ We will consider first the expenditures made while plaintiffs were in possession of the property. These expenditures consisted of the payment of the 1941 tax on the property, water assessments for irrigation, upkeep, minor repairs and improvements. The trial court determined that these expenditures by plaintiffs were voluntarily made by plaintiffs with full knowledge of all the facts and without any fraud, duress, extortion or deceit on the part of defendant, and further that plaintiffs' present claim was finally settled and adjusted in the settlement of the prior action. Recovery was denied. Plaintiffs, who are appellants in this court, are here broadly contending that to deny recovery permits the unjust enrichment of the defendant to the prejudice of and at the expense of appellants which is contrary to equitable principles, and this being a proceeding in equity plaintiffs should be allowed to recover. However, plaintiffs are in a court of equity in the unenviable position of asking to be relieved from a situation in which their own fraudulent acts placed them and at the expense of the very person whom they tried to defraud. Implicit in the findings of the trial court in the prior action is the fact that plaintiffs fraudulently came into the possession of the deeds to the property after the death of Joanna Held, and that they continued in their fraud when they attempted to support the validity of the

deeds by evidence which the trial court expressly found was a "forgery and a fraud." Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 2, § 401, states the rule as follows, "* * * Whatever be the nature of the plaintiff's claim and of the relief which he seeks, if his claim grows out of or depends upon, or is inseparably connected with, his own prior fraud, a court of equity will, in general, deny him any relief, and will leave him to whatever remedies and defenses at law he may have. * * * A person who comes into court with a claim which the pleadings show to have had its origin in a fraudulent transaction cannot ask a court of equity to act upon the conscience of a defendant, and force him to do right towards one whose own legal conscience is not void of offense. Equity will leave such parties in exactly the position in which they have placed themselves, refusing all **affirmative** aid to either of the fraudulent participants. The only equitable remedies which they can obtain are purely defensive. * * * One who fraudulently appropriates the property of another for his own use will not receive the aid of a court of equity in any matter with which such reprehensible conduct is connected. * * *" Plaintiffs are in no different or better position than a grantee who knowingly takes a conveyance to aid in a scheme to defraud the grantor's creditors. It is generally held that such a grantee cannot come into equity and obtain affirmative relief on account of taxes paid or expense had in connection with the property. Annotation 8 A. L. R. 542.

■ Upon the final settlement of the prior action plaintiffs paid the amount of the judgment and a further amount for the holding and use of the property during the time consumed by the appeal. Plaintiffs now contend that this payment was intended to give them the possession of the ranch property until the May following September 29, 1945, when the settlement was made. We find nothing in the record to support this claim. Exhibit "A" upon which appellants rely is simply a statement prepared by their own counsel at the time of the settlement, and contains an item of "Rent of ranch for 1945." Appellants had the use of the ranch during the 1945 farming season. Since the settlement was so obviously for the purpose of settling the lawsuit, and

for no other purpose, the exhibit does not, in our opinion, support appellants' position and give them a right to the possession of the ranch well into the next farming season. At the time of the settlement plaintiffs were apparently willing to pay for the use of the land in 1945 the amount that was paid, and in the absence of any showing of fraud or mistake they are bound by the settlement.

The third item which appellants seek to recover is the cost of certain abstracts. After the settlement of the litigation between these parties, the administrator conducted proceedings for the sale of the land. During these proceedings, in the judgment of counsel for the administrator, need appeared for abstracts of title to the property. The plaintiffs had acquired abstracts and it was agreed that if the plaintiffs would deliver the abstracts to the administrator or his counsel that they would be paid the actual cost thereof. The abstracts were delivered, and the property purchased by third parties. With the presentation of the above claims for taxes, etc., counsel for the administrator refused to pay for the abstracts. Counsel's letter states, "While it is true that the administrator and his attorney gratuitously agreed to pay S. Fred and Isaac Morris the amount which they have paid out in having the abstracts continued, * * * said offers were made before the administrator or his attorney had any knowledge that any such claim as that contained in your letter was being or would be made by S. Fred and Isaac Morris against the estate. * * * We, of course, wish it to be understood that should this claim, which we consider to be entirely fictitious, be dropped we stand ready to comply with any and all agreements which we have heretofore made in connection with these abstracts."

No question is here presented of the obligation of the administrator to furnish an abstract of title to the purchaser. As we view these facts, it was the judgment of the administrator and his counsel that abstracts of title were necessary for the proper administration of the estate. The abstracts were purchased from and delivered by the plaintiffs. Plaintiffs are entitled to be paid accordingly to the agreement.

The judgment appealed from is reversed, and the trial court is directed to enter judgment in favor of the plaintiffs for the amount claimed for the abstracts.

All the Judges concur.